## In re STEWARD'S ESTATE.

(Surrogate's Court, Chautauqua County. April 19, 1890.)

1. DESCENT AND DISTRIBUTION—RIGHTS OF WIDOW—EXEMPTION—APPRAISEMENT.
   Laws N. Y. 1889, c. 406, § 1, gives a widow of a decedent leaving children a life-interest in $1,000 worth of decedent's land "in addition to" her dower. Section 2 provides that there shall also be appraised and set apart to the widow household furniture, provisions, etc., not exceeding $150; and in case the interest of a widow in the realty of her deceased husband, "in addition to her dower right, and together with said $150," shall be of less value than $1,000, then there shall also be set apart to her personal property which, together with the realty, shall amount to $1,000 in value. Held, that the value of the additional amount of personal property to be set apart to the widow under section 2 is the difference between $1,000 and the present value of the life-interest in the $1,000 worth of land given her by section 1,, excluding the value of her dower and the $150 of household goods, etc.; the words "in addition to her dower right, and together with said $150," used in section 2, being construed to mean "exclusive of her dower right and said $150." In re Daggett's Estate, 9 N. Y. Supp. 652, disapproved.

2. EXECUTORS AND ADMINISTRATORS—APPRAISEMENT—POWERS OF SURROGATE.
   Surrogates' courts, in ordering an appraisal of a decedent's estate, have the incidental power to judicially ascertain the incumbrances on the land and the widow's age, so as to determine the value of her dower interest, and, in the order appointing appraisers, to instruct them in regard thereto.

On motion for correction of inventory of the estate of Warner Steward, deceased.

Norman M. Allen, for petitioner. George H. Frost, for contestants.

SHERMAN, S. The question involved relates to the construction of chapter 406 of the Laws of 1889, as to the duties of appraisers in making inventory in case of husband dying intestate, and leaving widow and descendants. The petitioners claim that the dower right of the widow, and the $150 mentioned in the act, should be added to her life-interest in land valued at $1,000, and, if these amount to less than $1,000, the difference to make that sum should be set off to her and the minor children in personal property, and not otherwise. The contestants claim that the dower right of the widow and the $150 should be excluded in making the appraisal, and that only the life-interest of the widow in the land valued at $1,000 should be included, and that the difference to make $1,000 should be set off to the widow and minor children in personal property. The amount in controversy in this case is $429.65, which the appraisers have set off to the widow and minor children in personal property, which sum, the petitioners claim, should be wholly disallowed. The deceased died intestate September 16, 1889, leaving a widow, aged 43 years, and five children, of whom three are minors and two of full age, and one grandchild, a minor son of a deceased daughter of said Warner Steward, deceased, by his former deceased first wife, and two other grandchildren, also minors, named Earl and Floyd Cadwell, sons of another deceased daughter of said Steward by his said first wife, long since deceased. The two Cadwell grandchildren appear herein by their counsel and special guardian, and ask for the correction of the inventory by wholly disallowing said $429.65. The deceased died seised of land of the value of $5,825, and personal property appraised at $2,225.40, besides the articles set off to his widow under the Re-

vised Statutes, and the $150 in personal property given by chapter 157, Laws 1842. The deceased intestate owed no debts.

The following is a copy of the act in question, here given for convenient reference in considering the question involved:

Chapter 406, Laws 1889: "An act to amend chapter two of part two of the Revised Statutes, as amended by chapter three hundred and twenty of the Laws of one thousand eight hundred and thirty, by making an additional section to said chapter, and to amend section two of chapter one hundred and fifty-seven of the Laws of one thousand eight hundred and forty-two, entitled 'An act to extend the exemption of household furniture and working tools from distress for rent and sale under execution,'" relating to the descent of real estate and distribution of personal property. Approved by the governor June 7, 1889; passed, three-fifths being present.

"The people of the state of New York, represented in senate and assembly, do enact as follows: Section 1. Chapter two of part two of the Revised Statutes, as amended by chapter three hundred and twenty of the Laws of one thousand eight hundred and thirty, is hereby amended by making an additional section to said chapter, to be known as section thirty, and said section shall read as follows: 'Sec. 30. If the intestate shall leave a widow and a descendant or descendants, then such widow, in addition to any interest to which she may be entitled under the preceding sections of said chapter two, shall be entitled to the use, during her life, of an additional portion of the estate, not exceeding in value one thousand dollars; and, in case the intestate shall leave a widow and no descendant or descendants, then the widow shall be entitled to the absolute ownership in fee of such additional portion of the estate.' Sec. 2. Section two of chapter one hundred and fifty-seven of the Laws of one thousand eight hundred and forty-two, entitled 'An act to extend the exemption of household furniture and working tools from distress for rent and sale under execution,' as amended, is hereby amended so as to read as follows: 'Sec. 2. When a man having a family shall die, leaving a widow or minor child or children, there shall be inventoried by the appraisers, and set apart for the use of such widow and child or children, or for the use of such child or children, in the manner now prescribed by the ninth section of title third, chapter sixth, of part second, of the Revised Statutes, necessary household furniture, provisions or other personal property, in the discretion of said appraisers, to the value of not exceeding one hundred and fifty dollars, in addition to the articles of personal property now exempt from appraisal by said section; and in case the interest of a widow in the real estate of a deceased husband, in addition to her dower right, and together with said one hundred and fifty dollars, shall be of less value than one thousand dollars, then said appraisers shall set apart for the use of such widow, or for the use of such widow or child and children, in the manner hereinbefore prescribed, personal property which, together with said real estate, shall amount to one thousand dollars in value. Said appraisers are authorized to make an appraisal of the real estate to which the widow may be entitled, for the purposes of this section. The provisions of this section shall apply where a man dies intestate, as well as where he leaves a last will and testament.' Sec. 3. This act shall take effect immediately."

In this case the dower right of the widow is conceded to be over $1,100, and the value of her life-interest in the $1,000, under above section 1, is $570.35, which sum is all the widow receives under this new statute by its construction as claimed by the petitioners, being $429.65 less than a widow having no children would receive who would take $1,000 in land in fee-simple, and no personal property; a most gross and unjust discrimination in favor of the childless widow against the widow having minor children, as in this case, to support and educate, and who are entitled to share with her the benefits of this new statute,—an injustice the legislature never intended to per-

petrate. On the contrary, it intended by this new law to ameliorate in some degree the injustice done by former statutes to the widow and her minor children, by giving them in all cases an increased allowance from the real and personal property of the deceased intestate or testate husband, making such increase in every case just $1,000, where there may be sufficient property to do it. Under the construction claimed by the petitioners, each of the two petitioning grandchildren would receive from the personal property of this estate just $20.30 more than under the construction claimed by the contestants. If a just and fair construction of this act grants it, they should, of course, have it. In *Re Daggett's Estate*, reported in 9 N. Y. Supp. 652, in which the opinion is written by a learned surrogate whose opinions are read with interest and respect by the legal profession, and in whose opinion I regret to be unable to concur, the surrogate adds the dower right and the $150, and the value of the widow's life-interest in land valued at $1,000, and sets off the balance in personal property to make the $1,000, being $255 less than such widow would have had if the dower right and the $150 had been excluded, and also $255 less than she, in any event, would have received if her husband had died leaving no descendant, as in that case she would have received land in fee-simple valued at $1,000, exclusive of her dower and the $150. Again, if the husband, in the case cited, had died leaving no child or descendant, and no personal property, but land, as stated, of the value of $1,150, the widow would have taken $1,000 in land in fee-simple, while the widow having children by her deceased husband would only take the life-use of the same land, stated in the case cited as valued at $275; the childless widow in such case taking about $725 more under this act than the widow having children, and that exclusive of her $150 and dower. Most of the estates coming before surrogate courts are small in value; in many cases the husband dying intestate, and leaving a widow with minor children to support and educate, and a house and lot or other real estate worth from $1,000 to $1,500, and very little personal property beyond enough to pay funeral expenses and expenses of administration. In such cases the widow without descendants would take nearly the entire estate, while the one left by her deceased husband with minor children to educate and support would have very little or nothing aside from her life-interest in the real estate.

The first sentence of section 2 of the act is a copy of section 2 of chapter 157 of the Laws of 1842, which extended the exemption of household furniture and working tools from distress and sale under execution, and gave the widow $150 in household furniture or other personal property more than was authorized by statute prior to the act of 1842. The remaining portion of section 2 applies to a husband dying intestate as well as testate, and commences by stating that, in case the interest of the widow in the real estate of the deceased husband, in addition to her dower right, and together with said $150, shall be of less value than $1,000, the appraisers shall set apart enough personal property to make that amount, and provides that the appraisers may appraise the real estate of which the widow may be entitled for the purposes of such section. It was conceded on the argument of this case, and I think correctly so, that the dower right and the $150 are "together" to be either both included or excluded in determining the amount of personal property to be set off to the widow.

The following conceded errors in section 1 are not important, except in demonstrating the exceedingly bungling manner in which this very important statute, as affecting the rights of widows, orphans, and creditors, and fruitful of litigation, was drawn and passed by the legislature, and in materially aiding in interpreting the meaning of the words, "in addition to her dower right, and together with said $150," in the second sentence of section 2: (1) The first mistake in section 1 of the amendment by adding section 30 is in its reference to chapter 2, pt. 2, Rev. St. The "interest" of the widow referred

to in section 30 must relate to her dower right, which is not granted by said part 2, c. 2, but is given by chapter 1 of same part 2 under the head of "Estates in Dower," containing 25 sections. Chapter 2 of part 2, containing 29 sections, relates wholly to title to real property and by descent. (2) Another mistake in section 1 is in the use of the words, "in addition to any interest to which she may be entitled," etc. Such words are mere surplusage. The right of dower is a common-law right confirmed by statute, while the right of a widow to personal property of her deceased husband is not given by the common law, but by statute, and neither right can be taken away or abridged except by positive statutory enactment. (3) The words in section 1, "of an additional portion of the estate," and "of such additional portion of the estate," are also words of surplusage, and are only important in ascertaining the meaning of the words in the second sentence in section 2, "in addition to her dower right, and together with said $150." And here comes the pivotal question, whether the legislature intended the latter words, "in addition to her dower right, and together with said $150," to have the same meaning as the words "over and above" or "exclusive of" would have had in the same connection, or, on the other hand, the same meaning as the single word "including," which substituted words, in either case, the wayfaring man could easily understand. For "wayfaring," see Webst. Dict.; Judges, xix. 17; Isaiah, xxxv. 8. In my opinion, the above words, "in addition to her dower right, and together with said $150," were intended by the legislature as words of addition, but in the same sense as the above like quoted words in section 1, and, in view of the whole context of the act, to convey the same meaning that the words "over and above her dower right" would have had in the same connection; the "addition" being in adding the value of her dower and $150 to her share in the personal property.

This statute, so far as it relates to dower and the $150, being remedial, the elementary writers upon the construction of statutes, as well as the decisions of our highest courts, concur that it must receive a liberal and equitable construction, in order to accomplish the humane purposes of its enactment, in the interest of widows and minor children; that in doing so, in order to ascertain the true intent of the legislature, the courts are bound to consider the whole context of the act, restraining the letter, and disregarding the mere technicalities and surplusage, so as more effectually to conserve the beneficial end in view, and prevent a failure of the remedy. 1 Bl. Comm. 87; 1 Kent, Comm. 462, 464, 465; *King* v. *Inhabitants*, 16 East, 122; Hale, P. C. 364; *Fulmerston* v. *Steward*, Plow. 109; *Heydon's Case*, 3 Coke, 7; *People* v. *Insurance Co.*, 15 Johns. 380; *In re New York, etc., Bridge*, 72 N. Y. 530. In the last-cited case, Chief Justice CHURCH says: "If practicable, effect must be given to all the language employed, and inconsistent expressions are to be harmonized to reach the real intent of the legislature." Chancellor KENT says, in his Commentaries: "The true meaning of the statute is generally and properly to be sought from the body of the act itself. But such is the imperfection of human language, and the want of technical skill in the makers of the law, that statutes often give occasion to the most perplexing and distressing doubts and discussions arising from the ambiguity that attends them." Illustrations might be given *ad infinitum* to show the gross injustice of this act to widows and minor children, under the construction claimed by the petitioners. Take the supposed case of a husband dying intestate, leaving a widow aged 30 years, and minor children, and seised of title to land in fee-simple of the value of $1,200, including her dower right. It would in such case be the duty of the appraisers to first appraise the dower right of the widow in the land, which would be $260, and deduct that from the $1,200, leaving $940, and then appraise the life-interest of the widow in land worth $940, which would be about $611, and then adding to this sum the $150, and her dower of $260, would make $1,021. The widow in such case would receive no personal property what-

ever, the amount being in excess of the $1,000 mentioned in the act. The same husband in this supposed case dying intestate, and leaving no descendants, his widow would take land in fee of the value of $1,000, besides her dower therein, valued at $260, less $40, and no additional personal property, but would take much more personal property under the statutes of distribution that she would, having children. It was claimed and conceded that a very reputable female relative of a former honorable member of the legislature, in one of the assembly districts of an adjoining county, who, having a child by a former deceased husband, and had married a worthy gentleman owning real and personal property valued at nearly $1,500, and who, quite unsatisfactorily to his affianced, had neglected to make his last will and testament, is the real *mater* of this remarkable progeny, as affecting the rights of widows, children, and creditors as well; the "occult significance" of which, in the language of the learned surrogate of the same county, reported in *Re Daggett's Estate*, is "unfathomable," the honorable law-makers of this state being only its sponsors. Should they not now see that this *antenati*, uncouth, deformed, yet lusty and promising child, be at least bound with swaddling cloth, and decently clad, and so brought up, that it may have a fair chance for life in the evolutions of this progressive age?

It has been claimed that the act in question is inoperative for the reason that appraisers have no authority to administer oaths to ascertain judicially the ages of widows of husbands dying intestate, necessary in appraising the value of their dower interests under rule 70 of the supreme court, and to take proofs of incumbrances on lands of deceased husbands necessary in appraising the dower right and value of use of land during life. I am inclined to the belief that these are duties which belong to the surrogate courts, as incident to the power to order an appraisal, to be exercised by them judicially before appointing the appraisers, and to give instructions as to the same to the appraisers, in the orders appointing them. If such courts do not now possess the necessary authority, it would seem that the legislature should grant it, either to such courts or to some other. I direct decree denying the petition in this proceeding to revoke or amend the appraisal, with the costs payable out of the estate.